

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| UNITED STATES OF AMERICA, | CR 17–19–BU–DLC |
|---|---|
| Plaintiff, | |
| vs. | ORDER |
| MARTIN JAY HOPE, | |
| Defendant. | |

Before the Court is Defendant Martin Jay Hope's ("Hope") Motion to Dismiss for Lack of Jurisdiction/Failure to State an Offense Against the United States (Doc. 16). Hope argues that he was not in custody for purposes of effecting an escape as required by the indictment and that, as a result, the charges against him should be dismissed. The Government opposes Hope's Motion. For the following reasons, the Court will deny Hope's Motion.

### FACTUAL BACKGROUND

In November 2008, Hope was sentenced to 312 months imprisonment as an Armed Career Criminal. In March 2017, Hope was resentenced to 120 months imprisonment followed by three years of supervised release. (Docs. 17 at 2; 18 at 2.)

On April 27, 2017, Hope signed a "Supervision Release Plan" indicating that he would be eligible for supervised release on October 26, 2017. (Doc. 18-11 at 2.) On this same form, it was indicated that Hope was "recommended for Residential Reentry Center Placement prior to release to assist him with an appropriate societal reintegration process and viable plan of transition into the community." (*Id.*)

On September 6, 2017, Hope applied for furlough with the Federal Bureau of Prisons ("BOP") requesting transfer from USP Atwater, where he was serving his prison term, to a Residential Reentry Center ("RRC") in Butte, Montana. (Doc. 18-4 at 1.) Hope signed this application under a statement expressing his understanding that he remained in the custody of the Attorney General of the United States, that his furlough only extended the limits of his confinement, and that he could be charged with escape under 18 U.S.C. § 751 if he failed to remain within these extended limits of his confinement. (*Id.*) Hope also signed a form detailing the conditions of his furlough and reiterating that he remained "in the legal custody of the U.S. Attorney General, in service of a term of imprisonment" and would be "subject to prosecution for escape" should he fail "to return to the institution at the designated time." (Doc. 18-5 at 1.)

Hope's application for furlough to be transferred to the Butte RRC was approved on September 15, 2017. (Doc. 18-4 at 1.) The application indicated

that Hope's furlough would begin on September 26, 2017, at 8:00 a.m. and end on September 27, 2017, at 6:20 p.m. (*Id.*) The application further indicated that Hope was to be transported to the Butte RRC via Greyhound bus and was to arrive in Butte by 5:20 p.m. on September 27, 2017, and report to the Butte RRC by 6:20 p.m. that same day. (*Id.*)

Hope boarded the bus as planned on September 26, 2017. (Docs. 17 at 2; 18 at 2). However, on September 27, 2017, Hope failed to board a connecting bus in Reno, Nevada, as scheduled. (Doc. 18 at 3.) Hope advised the BOP that he had missed his bus transfer and the BOP purchased Hope a new bus ticket for an arrival in Butte no later than 6:20 p.m. September 28, 2017. (Docs. 18 at 3; 18-9 at 2.) On September 29, 2017, after confirming that Hope had not arrived at the Butte RRC, the BOP advised the United States District Court for the District of Montana, the United States Marshals Service, and the United States Attorney's Office that Hope was placed on escape status for his failure to report to the Butte RRC. (Docs. 18 at 3; 18-8 at 1.) Hope was arrested in Longview Washington on September 30, 2017. (Doc. 18-10 at 2.) Thereafter, Hope was charged with escape pursuant to 18 U.S.C. § 751(a). (Doc. 3 at 1–2.)

## DISCUSSION

The issue before the Court is whether Hope was "in custody," as that term is used in 18 U.S.C. § 751(a), when the BOP transferred him to the Butte RRC. If

Hope was not, then he cannot be found guilty of "escape" under that statute.

Section 751(a) provides:

> Whoever escapes . . . from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony . . . be fined . . . or imprisoned . . . or both . . .

Hope contends that he has not committed the crime of escape because "confinement in a community treatment center or half-way house is not imprisonment or custody within the purview of 18 U.S.C. § 751(a)." (Doc. 17 at 3.) Additionally, Hope argues that, as provided by 18 U.S.C. § 3624(e), "supervised release commences on the day the person is released from imprisonment." (Doc. 17 at 3.) Apparently contending that he was on supervised release at the time in question, Hope then states that "supervised release is not custody." (*Id.* at 3.) Hope's argument ends with an unexplained quote from *United States v. Burke*, 694 F.3d 1062, 1065 (9th Cir. 2012):

> Burke was conditionally released from incarceration; his failure to return to [Spokane RRC] was a violation of his release conditions punishable by revocation of release, not an escape from "custody" within the meaning of § 751(a).

(*Id.* at 3–4.)

The Government responds that Hope's furlough and transfer to the Butte RRC was initiated pursuant to the "prerelease custody" provision of 18 U.S.C. § 3624(c)(1). Section 3624(c)(1) provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(Doc. 19 at 2.) The Government contends that this establishes that Hope would remain in BOP custody for another month while at the RRC before beginning his term of supervised release. (*Id.* at 2.) Because the BOP had not released Hope from custody but merely transferred him to a RRC for the final month of his term of imprisonment, the Government contends that he is guilty of escape under § 751(a). The Government also contends that because Hope remained committed to BOP custody at the time he absconded, his case is distinguishable from *Burke* where the defendant had "completed his prison term and was no longer in BOP custody when he left the [halfway house]." (Doc. 18 at 7 (quoting *Burke*, 694 F.3d at 1065).)

Hope counters that the RRC is a non-prison setting and argues that the day he was transferred to the Butte RRC was the date he was "released from imprisonment" for purposes of commencing his term of supervised release under §

-5-

3624(e). (Doc. 20 at 2–3.) Accordingly, Hope claims that he was on supervised release at the time he absconded. (*Id.* at 3.) As Hope argues that supervised release is not custody for purposes of § 751(a), it follows that he "cannot be held accountable for escape." (*Id.*)

Initially, Hope's argument comes down to whether his transfer to the Butte RRC was a release from imprisonment which would classify him as being on supervised release at the time he decided to abscond. Hope's argument overlooks Ninth Circuit precedent establishing that "release under a pre-release program does not trigger the start of [a] term of supervised release." *United States v. King*, 608 F.3d 1122, 1127 (9th Cir. 2010) (citing *United States v. Miller*, 547 F.3d 1207, 1212–13 (9th Cir. 2008)). In *United States v. Miller*, the Ninth Circuit established that when a defendant is transferred to a prerelease program "during, and as part of, his federal sentence and pursuant to the mandate of § 3624(c), which defines the pre-release component as part of the term of imprisonment," the defendant "remained under BOP custody" and his supervised release would not commence until he was released. 547 F.3d 1207, 1212–13 (9th Cir. 2008).

Hope's contention that *United States v. Sullivan*, 504 F.3d 969 (9th Cir. 2007), established that his transfer to the Butte RRC began his term of supervised release is misplaced. There is a "critical distinction" between the defendant in *Sullivan*, who was "serving a *state* sentence when transferred to a Montana pre-

release center" and had "completed the federal portion of [his] three concurrent sentences," and the defendant in *Miller*, who was transferred to the prerelease program "during, and as part of, his federal sentence and pursuant to the mandate of § 3624(c)." *Miller*, 547 F.3d at 1211–12 (citing *Sullivan*, 504 F.3d at 970). In *Miller*, the Ninth Circuit further noted that:

> At first blush, it would appear that *Sullivan* stands for the proposition that pre-release programs are not imprisonment in any context. However, *context provides important distinctions and reveals that Sullivan's holding is applicable only to substantially similar factual circumstances; i.e. where an individual has completed his federal sentence but is still serving a concurrent state sentence* and is sent to a state pre-release center. Here, Miller was placed in pre-release custody at the end of his *federal* sentence.

*Id.* at 1212 n. 7 (internal quotations and citation omitted) (emphasis in original).

Hope's case is analogous to the case in *Miller* and, accordingly, he was not on supervised release when he absconded on September 28, 2017. Hope was transferred to the Butte RRC before his scheduled release date of October 26, 2017. In other words, Hope "was placed in pre-release custody at the end of his federal sentence" and was transferred to the Butte RRC "during, and as part of, his federal sentence pursuant to § 3624(c)." *Id.* at 1212. Since Hope was placed in pre-release custody pursuant to § 3624(c), his term of supervised release had not

commenced at the time he absconded.[1]  Having determined that Hope was not on supervised release at the time he absconded, the Court now turns to whether Hope was in "custody" as the term is used in § 751(a).

Hope contends that "confinement in a community treatment center or half-way house is not imprisonment or custody within the purview of 18 U.S.C. § 751(a)."  Hope cites *United States v. Latimer*, 991 F.2d 1509, 1514–15 (9th Cir. 1993), and *United States v. Sullivan*, 504 F.3d 969 (9th Cir. 2007), as supporting this contention.  (Doc. 17 at 3.)

After reviewing both of these cases, the Court is not convinced that either case establishes that "confinement in a community center or half-way house is not imprisonment or custody within the purview of 18 U.S.C. § 751(a)."  Neither *Latimer* nor *Sullivan* addressed either "custody" or § 751(a).  The Ninth Circuit in *Latimer* addressed "whether confinement in a community treatment center constitutes incarceration under the meaning of § 4A1.2(e)(1) of the Sentencing Guidelines."  991 F.2d at 1510.  While the Ninth Circuit in *Sullivan* addressed whether a defendant serving a state sentence commenced his federal supervised release when he was transferred to a pre-release center.  504 F.3d at 970–71.

---

[1] In his reply brief, Hope asserts that "community confinement is not prison."  (Doc. 20 at 2.)  Regardless of whether or not community confinement is prison, *Miller* establishes that Hope did not commence his term of supervised release when he left the prison to be transferred to the RRC.  Hope's argument to the contrary lacks merit.

Section 751(a) does not require "imprisonment" or "incarceration." *See* 18 U.S.C. § 751(a); *see also United States v. Keller*, 912 F.2d 1058, 1059 (9th Cir. 1990) (stating that "custody need not involve direct physical restraint."). Accordingly, it is irrelevant whether "confinement in a community center or half-way house" is "incarceration" or "imprisonment" for purposes of determining whether it is "custody" under § 751(a).

Further, as the Court has determined that Hope was not on supervised release on September 28, 2017, Hope's reliance on *Burke* is similarly errant. In *Burke*, the Ninth Circuit held that the defendant, Burke, who had completed his imprisonment and was residing in a halfway house as a condition of his supervised release was not in "custody" as required by § 751(a). 694 F.3d at 1064. Importantly, however, the Ninth Circuit noted that Burke "was not serving a prison sentence, nor was he confined to the [Spokane RRC] under conditions equivalent to custodial incarceration." *Id.* Moreover, in Burke's case, the RRC was "part of supervised release" and was "a court order after imprisonment [was] served and the person [was] no longer in custody." *Id.* at 1063. Because Burke "had completed his prison term and was no longer in BOP custody when he left [the RRC]," there was a "crucial distinction" between his case and previous cases in which the defendants "were committed to BOP custody when they absconded." *Id.* at 1065. The same crucial distinction applies in this case.

Unlike the defendant in *Burke*, Hope was not on supervised release when he absconded. Instead, Hope was still serving his federal prison sentence. Further, Hope's transfer to the Butte RRC was not part of his supervised release, as was the case in *Burke*, but was initiated pursuant to § 3624(c). Accordingly, *Burke* does not establish that Hope was not in custody at the time he absconded.

When a defendant is transferred pursuant to § 3624(c), he remains under BOP custody until his prescribed term of imprisonment expires. 18 U.S.C. § 3621(a) establishes that "[a] person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the [BOP] until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624." In *Miller*, the Ninth Circuit recognized that 18 U.S.C. § 3621(b) gives the BOP "considerable discretion in assigning a person to a particular facility . . . for purposes of serving a term of imprisonment. Regardless of where the BOP elects to transfer a person, she or he remains under BOP custody until the prescribed term of 'imprisonment' expires." 547 F.3d at 1211. Importantly, the court stated that Sections 3621(b) and 3624(c), read together, give the BOP "explicit authority" to designate the place of an individual's imprisonment, including placement that will prepare him for reentry into the community. *Id.* Accordingly, while the BOP may transfer a defendant to a RRC to prepare him for reentry into the community pursuant to § 3624(c), the

-10-

defendant remains under BOP custody until his prescribed term of imprisonment expires.

Hope's term of imprisonment was scheduled to terminate on October 26, 2017. When the BOP transferred Hope on September 26, 2017, the BOP was not releasing him. Rather, the BOP was acting pursuant to § 3624(c)'s mandate that the BOP ensure that prisoners spend a term of their imprisonment in conditions that will give them a reasonable opportunity to adjust and prepare for reentry. Far from relinquishing custody, the transfer was done according to the statutory authority and direction of sections 3621 and 3624(c) for controlling defendants committed to the custody of the BOP. Therefore, Hope was still in the custody of the BOP while he failed to appear at the Butte RRC on September 28, 2017. Accordingly,

IT IS ORDERED that Hope's Motion to Dismiss for Lack of Jurisdiction/Failure to State an Offense Against the United States (Doc. 16) is DENIED.

DATED this 10th day of January, 2018.

*Dana L. Christensen*
Dana L. Christensen, Chief District Judge
United States District Court